v. Bloxom Good morning. My name is Stacey Beckerman and I am counsel for L.C. Cunningham, the appellant in this case. This appeal is different from the other appeals that you received from prisoners whose motions to appoint counsel were denied by the trial court pursuant to 28 U.S.C. section 1915E1 for at least two important reasons. One, the magistrate judge here stated on the record that he did not have the authority to grant Mr. Cunningham's motion to appoint counsel, which is legal error. And two, the exceptional circumstances analysis here is fundamentally different than other cases because this case involved a jury trial. First, it is clear from the record in this case that Magistrate Judge O'Neill did not recognize that he could request the voluntary assistance of counsel pursuant to 28 U.S.C. section 1915E1. Importantly, it is well settled after the Supreme Court's decision in Mallard that to appoint counsel in this context does not mean that the court needs to pay counsel or that the court need coerce counsel into serving unwillingly. All a point means in this context is to ask for the volunteer assistance of counsel. In rejecting Mr. Cunningham's fifth motion to appoint counsel on the first day of trial, Magistrate Judge O'Neill stated, one, Congress has not given the court the monies to pay counsel in this context, and two, the court certainly doesn't have the power to force a lawyer to represent somebody for free. In conclusion, he said, these are the only two alternatives. It's clear from these comments at trial that Judge O'Neill did not recognize that he could ask the private bar to volunteer to represent Mr. Cunningham at trial. Under this Court's decisions in 30.64 acres of land, McQuaid and Gardner, it's legal error for a court to deny a motion to appoint counsel on the basis that the court lacks the authority to grant the motion. Sergeant Bloxam cannot distinguish But the written order, which makes specific reference to the possibility of voluntary assistance of counsel. That's Judge O'Neill's pretrial order denying L.C. Cunningham's fourth motion, and that is not important for the ultimate question for three reasons. One, it doesn't say anything about Judge O'Neill's express statements at trial that he didn't understand the test, that he didn't have the authority. It's quite unusual in a trial proceeding or in a courtroom proceeding for the judge not to recite everything that might be contained within a written order. That's true, and it might have been a different result if he had said nothing, but by what he did say, he expressly did not understand the alternatives available to him. He said that there are two alternatives. He did not recognize that there are other comments. He didn't understand the test. Secondly, the December 12, 2000 order is merely a cut and paste of Magistrate Judge Snyder's three prior pretrial orders also denying counsel. While that's fine and that's a common thing, it certainly doesn't show us today that he understood the test under Section 1915. And third, even if that December 12 order did have some bearing here, it's irrelevant because that order and the three orders preceding it, the three verbatim orders preceding it, got the test wrong. It got the test wrong because if you read the orders, the four pretrial verbatim orders carefully, what they say in those orders is that even if it is assumed that Mr. Cunningham's case was likely to succeed on the merits and that he was unable to articulate his claims pro se in light of the complexity of the legal issues, it doesn't matter because the court receives these kind of cases every day from prisoners. So what they're essentially saying in their orders is even if the case presents exceptional circumstances, the case does not pass the exceptional circumstances test required by the Ninth Circuit because we get these kind of cases every day. But importantly, that is not the correct test. Even if Mr. Cunningham passes the test, he passes the test regardless of how many other prisoners pass the test. Judge Snyder misapplied the Ninth Circuit's exceptional circumstances test in her three pretrial orders. Magistrate Judge O'Neill copied that order and therefore also incorrectly applied the test. And then on the first day of trial, Judge O'Neill expressly stated he didn't have the authority to grant Mr. Cunningham's motion, which was legal error. Even if they had applied the exceptional circumstances test here, and from the record, it doesn't appear that they actually went through the steps and applied the test, but even if they had, they abused their discretion by not recognizing that this case presented exceptional circumstances. That primarily rests on the fact that this was a jury trial, which differentiates this case from several other Ninth Circuit decisions which affirms the denial of a motion to appoint counsel at the motion to dismiss stage, the motion for summary judgment stage, and I think there's even a decision or two that denied it at a bench trial stage. But this was a jury trial, which is different for a couple of reasons. First, a failure to protect case often comes down to the issue of the credibility of the warden versus the credibility of the prisoner. The court may hide Mr. Cunningham's shackles in the courtroom, but the court can't hide, and the jury indeed knew in this case that Mr. Cunningham was a convicted felon. Prisoner litigants like Mr. Cunningham need an advocate in front of a jury to ensure a fundamentally fair trial and to assist them in articulating their claims. Secondly, trial procedure is fundamentally more complicated than pretrial procedure, and to put an uneducated prisoner in a courtroom without knowledge of the nonintuitive federal rules of evidence, the federal rules of civil procedure, and cross-examination tactics is unfair, and it fails the exceptional circumstances test in this case. Are you saying the exceptional circumstances is the fact of the jury trial? It's one of the factors. I think that the fact that it's a jury trial affects both prongs of the test. The first prong of whether or not the case is likely to succeed on the merits, the mere fact that it's gotten to trial is one factor that supports that first prong, which is not to say that every claim that reaches trial is likely to succeed on the merits. That's certainly not the case. But I think that it is a factor, and the fact that it has reached trial certainly means that it's more likely to succeed than a case that's merely at the motion to dismiss or the motion for summary judgment stage. Indeed, in the Third Circuit's decision in Tabron v. Grace, it's a case with almost identical facts. It's a failure to protect claim where a prisoner moved several times to the appointment of counsel and was denied. The Third Circuit granted this prisoner a new trial with instructions to appoint counsel because the failure to protect claim was likely to succeed on the merits. And it was almost exactly the same facts as here where a prisoner told his warden that he was going to be attacked. The warden didn't do anything about it. The prisoner was attacked. The Third Circuit held that such a case is likely to succeed on the merits, exceptional circumstances. The second prong of the, as I've already discussed briefly, is the prisoner's ability to articulate his claims, again, much more difficult in front of a trial than it is when a prisoner sitting in his law library with writ writers to assist him in writing his briefs, easier to articulate a claim pretrial than it is to articulate a claim in front of a jury. This was recognized by the Fourth Circuit in a case that both Sgt. Bloxham and Mr. Cunningham cited in their briefs called Wisehaunt v. Cunningham, which is another Section 1983 case. This time it was a denial-of-medical-care case. And the Fourth Circuit granted this prisoner also a new trial. And it was pre-Mallard, so when he appointed counsel, it really meant to appoint counsel and it didn't mean just to ask for the volunteer assistance of counsel. But that was, the Fourth Circuit based that holding, which is very similar to this case, on four factors. One, the prisoner was relatively uneducated and totally uneducated in the law, just like Mr. Cunningham. That prisoner's incarceration prevented effective discovery, as it did here. Also in that case, the prisoner's version of the events sharply contrasted with the warden's version of events, same as this case. And that prisoner also had no training in cross-examination, just like Mr. Cunningham. These are all the problems that Mr. Cunningham faced appearing in trial on his own. Just by way of one example, you can flip through the trial transcript, just to get a flavor of how well Mr. Cunningham performed at trial. But he stood up there at the end of trial, after not doing a great job articulating his claims, and he stated his closing statement to the jury after this day-long trial ended with, you know, so based on those, you know, based on that, you know. I just hope that you will follow the law and do the right thing. That's basically it. He needed an advocate in front of the jury. All that Judge O'Neill need do to satisfy his duty under Section 1915 is ask the private bar to serve. He did not need to pay them. He did not need a corps of somebody to serve. To satisfy his duty, he merely need to take time out, stay the trial for a few weeks, contact the private bar, the private bar association, see if there's anybody willing to serve. Quite frankly, as a litigation associate in a large law firm, I would jump at the chance to take on a jury trial, even if there is short notice. I think that there's a lot of lawyers out there who would be willing to serve in such a case. And if there are no further questions from the Court, I'd like to reserve just about my remaining half a minute for rebuttal. That's fine. Thank you for your argument. We'll hear from the State at this time. Ms. Hammond. Good morning, Your Honors. I'm Kelly Hammond. May it please the Court, I'm appearing on behalf of John Scott Bloxam, the appellee in this case. Your Honors, due process requires a fair trial rather than a perfect trial. If you review the record in this case in its entirety and in context, you'll see that Mr. Cunningham received a fair trial and he lost. He claims that he should have been appointed counsel and that Judge O'Neill, by denying his fifth request for appointment of counsel, denied him a fair trial. Under the Ninth Circuit test, which is the exceptional circumstances test, the Court considers both the likelihood of success on the merits as well as the ability of the pro se litigant to articulate his claims pro se in light of the complexity of the issues presented. I think you probably have to concede that the magistrate judge in his oral I'm sorry, Your Honor, I didn't hear you. I mean, I think at the onset you'd almost have to concede that the magistrate judge made a legal error in his statement at trial. At trial, he did not reference the exceptional circumstances test. That's correct. But he'd already denied it. I understand that. And the significance of that, I think we probably have to look in context. But really to see whether the error is harmless or not, don't we have to analyze the exceptional circumstances and see whether or not that test was met? So at the end of the day, aren't we just sort of analyzing whether the magistrate judge abused his discretion in denying it? Yes. It's an abuse of the discretion standard. In this case, however, as well, Ms. Beckerman said that the trial judge used the wrong analysis, even when denying in the motions. What the trial court wrote is that even assuming the pro se litigant is not well versed in the law, I believe that that doesn't equate to being unable to articulate one's claims, especially in light of this case where there was only one issue. It's a well-settled issue. Mr. Cunningham, throughout the litigation, was able to articulate his claims in his brief, cite to the record. He was able to apply the law to the facts. He was able to articulate his claims. There was only one claim remaining. That was an Eighth Amendment claim for failure to protect. It was not beyond Mr. Cunningham's ability to comprehend the end. The one issue that seemed to be sort of important was the initial statement to the jury about a summary of the facts that Mr. Cunningham said, well, if I had known it was going to be read like that, I wouldn't have agreed to it. And that's an independent claim on this appeal. Would you address that, please? Certainly. The summary of the case, the district court, prior to trial, a few months prior to trial, issued an order that both parties were to submit a summary of the case. The court informed both parties that the summary of the case would be read to the jury panel, but it was not to be considered evidence. Ms. Anderson, who represented Mr. Bloxham, submitted a summary of the case. Mr. Cunningham did not. The only summary of the case that was before the court on the day of trial was defendants. Does that mean that the trial judge in that circumstance can just take the one that's submitted and read it? No obligation to edit. Well, in this case, Your Honor, he asked Mr. Cunningham prior to the jury panel being brought into the courtroom if he objected to defendant's summary of the case. He initially asked Mr. Cunningham if he had the opportunity, if he had received it and reviewed it. Mr. Cunningham indicated to the court that he had. What he said is, oh, yes, I got that. Initially he said, I don't know, I don't know. But after being given an opportunity, he said, oh, yes, I got that. Initially he did object, but when asked the basis for his objection, he asked for additional time to review the document once again. He then withdrew his objection. Doesn't that sort of – I mean, you've read this thing, haven't you? Yes. It talks about minor altercation, minor red mark, minor injuries, that these inmates were really friends and everything was over and okay. And this is not a neutral statement of the case, is it? No, it's defendant's summary of the facts of the case. So what's the – you know, to get back to my initial question, what's the obligation of a trial judge in this circumstance, where they have an unrepresented party and a represented party, and the represented party produces a statement that's going to be read to the venire, and they just take – the judge just takes whatever is given to them? Well, in this case he did because Mr. Cunningham withdrew his objection. But the ultimate – You're not answering – maybe you don't want to, but you're not answering my question. What is the obligation of a trial judge in this circumstance? Do they just take whatever is given to them, or is there some obligation to make this statement neutral? He didn't – I don't believe he had the obligation when the objection was withdrawn to make the statement neutral. If Mr. Cunningham had objected and told the judge, I find this prejudicial, it only gives one side, at that point the trial judge could have gone through the summary with both parties and developed a neutral statement. What this Court is asking, I think, is for the judge to have fashioned a neutral statement on his own, and yes, he could have done that. But once again, there was – If I understand your position on behalf of your client, there's no obligation on the part of a trial judge to edit this kind of statement in any way, and even if there were an obligation, it's sort of washed away in this circumstance by the defendant's failure to object. Is that the State's position? Well, not just the State – the failure to object, Your Honor, but in this case, too, there was a limiting instruction given to the jury prior to the reading of the summary of the case. The judge insisted to the jury that what they were about to hear was not evidence and was not to be considered by them as evidence. You know, all of the psychological studies about jury trials tell us that primacy is the most important thing in persuading juries, that the first things they hear form those impressions, particularly when they hear it from the bench, from a person who's supposed to be a neutral arbiter. Are you telling me that this judge could have said, Ladies and gentlemen, here is a general statement about what this case is about. It's really not much of a case. It's just kind of a minor altercation between a couple of prison inmates. It's no big deal. Now, does everybody understand what this case is about? Would that have been okay? No, but that's not what he said either. It's pretty close, though. I mean, that's the problem with this. And then it folds back into whether or not – I mean, assessing the prejudice and whether or not counsel should have been appointed and whether the prejudice of the legal error – it folds into that a bit. Because no attorney worth his or her salt would have allowed that statement to be read with that serious objection. Yes, but Mr. Cunningham had the opportunity to review it prior to trial. He never objected. He understood that that was going to be read to the jury with an introduction by the judge that says this is what we expect the evidence to be. But you will not know what the evidence is until you've heard from the witnesses. Right. So they have that introduction and says, just as Judge Hawkins says, you won't know about the evidence, but really this isn't much of a case. I mean, it's kind of like an English judge summary to the jury where it instructs the jury what the judge believes to be what the evidence showed. But that's not the American system. The American system is a neutral statement. And I guess that gets to the heart of it. You keep saying he didn't object, he didn't object, but that to me goes to the question of the prejudice of not correctly deciding or at least making legal error in deciding whether or not he's entitled to counsel at that point. I'm not trying to argue with you. I'm just trying to elicit a reaction so you can say you can disagree with me and tell me why. I disagree with you that he made legal error when he denied the fifth request for appointment of counsel. We've already been through that. That's because he had already made a written denial and cited the exceptional circumstances test. One of the things that needs to be brought out, and it's with regard to the summary of the case, the ultimate question is whether the judge made it clear to the jury that all issues of fact and credibility are submitted to their determination. And in this case, Judge O'Neill did. He gave a limiting instruction prior to reading the summary of the case. He added a paragraph at the end of the summary of the case stating Mr. Cunningham's version or what his claim was about. He offered, again, more limiting instructions given during preliminary instructions to the jury itself. He allowed Mr. Cunningham to clarify his position during his opening statement. He once again, during the jury instructions at the end of trial, told the jury that they and they alone were to make the factual and credibility determinations. What was presented at trial, the evidence presented at trial, showed that the characterization of the injuries and the first altercation as minor was a correct characterization. So I don't believe that this Court should overturn the jury's verdict and vacate the judgment of the Court. Thank you, Your Honor. Rebuttal? On the second issue of the summary of the case before the Court, I just wanted to point out two things. My colleague stated that Mr. Cunningham withdrew his objection, but just to review how that withdrawal came about, when he initially objected, Judge O'Neill said, you object, is that all right with you or is that not all right with you? And Mr. Cunningham held his ground and said, no, I want to object, I want to read the summary of the case before you read it to the jury, to which Judge O'Neill said, yeah, but you have to do it, let's do it now because we have to get through several things here. He was pressured into withdrawing his objection. The summary was read. The summary was prejudicial. Not only was it prejudicial in that it said that there were minor cuts, minor abrasions. Like you said, any attorney with their assault would not let the summary be read. And, in fact, the extent of Mr. Cunningham's physical injury shouldn't have even been an issue at the trial. It's the issue that predominated the trial. If Mr. Cunningham had counsel, that would not have happened. In conclusion, Mr. Cunningham would like to respectfully request that not only should the case be remanded to the trial court to apply the exceptional circumstances test, but both based on the denial of the motions for appointment of counsel and the improper reading of the summary case, Mr. Cunningham respectfully requests that the case is remanded to grant a new trial with instructions to request the voluntary assistance of counsel. I have one sort of ending question. Very big. If we were to send this case back, will you represent Mr. Cunningham? Certainly. Thank you. Thank both sides for their arguments. The case just argued will be submitted for decision and will proceed to the next case on the calendar, which is Kumar v. The Immigration and Naturalization Service. Counsel will come forward.
judges: Hawkins, Thomas, Clifton